CRYE v. O'NEAL & ALLDAY et al.

(Court of Civil Appeals of Texas. March 2, 1911.)

1. ATTORNEY AND CLIENT (§ 134*) — DISCHARGE OF ATTORNEY—COMPENSATION.

A wrongful discharge by a client of his attorney relieves the attorney of the duty of further performance of his contract, and he may recover of the client the sum agreed upon to be paid for the entire service covered by the contract.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 301–303; Dec. Dig. § 134.*]

2. ATTORNEY AND CLIENT (§ 134*)—SERVICES—ABANDONMENT BY ATTORNEY.

If an attorney without just cause abandons his client before the proceeding he was employed to conduct terminated, he forfeits his right to any part of the compensation agreed upon.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 304; Dec. Dig. § 134.*]

3. ATTORNEY AND CLIENT (§ 166*)—FEES—DISCHARGE—EVIDENCE.

In an action involving attorney's fees, evidence held sufficient to show a wrongful discharge of the attorneys by the client, justifying a finding for fees contracted for.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 166.*]

Appeal from District Court, Cass County; P. A. Turner, Judge.

Action by J. T. Crye against O'Neal & Allday and others. From a judgment for defendants on cross-action, plaintiff appeals. Affirmed.

Smelser & Vaughan, for appellant. O'Neal & Figures, for appellees.

WILLSON, C. J. February 19, 1909, appellant made and delivered to O'Neal & Allday his promissory note for $250 and interest, payable December 15, 1909. At the same time he executed and delivered his deed conveying certain land and live stock to one F. M. Greene, as trustee, to secure the payment of said note. He was the plaintiff below. His suit was against said O'Neal & Allday and Greene, to enjoin them from selling the land and live stock under a power in the trust deed, and to cancel it and the note. It seems that appellant, being charged with the commission of a felony, had employed O'Neal & Allday, attorneys at law, to defend him against the charge, and that the note he sought to have canceled was one he had given to them as a part of a fee agreed upon for their services. The ground relied upon for the relief he sought was that O'Neal & Allday had refused to comply with their contract to defend him against said prosecution, in consequence of which he had been compelled to employ other attorneys to do so in their stead. O'Neal & Allday and Greene answered appellant's petition by a general denial, and O'Neal & Allday by a cross-action sought a recovery against appellant on the note and a foreclosure of the trust deed made to secure it. In reply to the cross-action appellant alleged that the consideration for the note had "failed in whole, in this: That said O'Neal & Allday failed and refused to defend the said J. T. Crye and did not defend him, and said note was given as a part payment to them to defend him." A trial before the court without a jury resulted in a judgment in favor of O'Neal & Allday against appellant for the sum due on the note, according to its terms, and for a foreclosure of the lien of the trust deed on the land and live stock, which were ordered to be sold in satisfaction of the amount adjudged in favor of O'Neal & Allday.

It is insisted that the evidence "showed beyond dispute that said O'Neal & Allday did not defend said Crye on said charge, but expressly refused to do so," and that therefore the court erred in rendering a judgment in their favor. The statement that the testimony was undisputed that O'Neal & Allday did not defend appellant is borne out by the record; but we cannot say that the further statement that they refused to defend him is undisputed by any testimony in the record. Appellee O'Neal, testifying in behalf of himself and Allday, said: "We went to work

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

(after they had been employed by appellant) and prepared his defense. I had several witnesses subpœnaed, and talked to several witnesses before I had them subpœnaed. I talked in the meantime to the state's witnesses and procured a continuance. Judge Allday at my suggestion went to the district attorney, Mr. Vaughan, to see if we could continue the case. We were not in any condition to try the case, and I knew, or, from the statements I had, I thought, it was dangerous to go to trial, and Judge Allday went to see Mr. Vaughan, the district attorney, and got an agreement to continue the case, and we told Mr. Crye to go home. * * * So far as refusing to defend him, I never did. He refused to pay me. He told me he didn't need our services any further—going to employ other lawyers." After testifying that appellant's undertaking was to pay O'Neal & Allday for defending him the sum of $500, $250 of which he was to pay in cash and the remainder December 15, 1909, as stipulated in the note referred to, that he failed to make the cash payment, and to efforts made by appellant to induce O'Neal & Allday to agree to defend him for a less sum than that before agreed upon, appellee Allday further testified as follows: "He (Crye) came in there one day—in the office—and said: 'I can get up $250, and if you all don't accept that I will just get me another lawyer.' That was before the August term of court after he had employed us. * * * Mr. Crye said he didn't want us to represent him, unless we could take it for $250. That was after court and after the case had been continued. * * * O'Neal & Allday did not defend him, just because he didn't carry out his contract—repudiated it. He said if we didn't take it for $250 he would get other lawyers. He did get other lawyers at the trial." It will be noted that O'Neal expressly testified that he never did refuse to defend appellant. Appellant's contention, therefore, that the judgment is wrong, because it conclusively appeared that O'Neal & Allday had refused to comply with their contract, must be overruled. However, we do not think it was necessary that they should have so refused, in order to deprive themselves of a right to recover on the contract. A failure on their part, without a sufficient excuse therefor, to comply fully with their undertaking, would, we think, operate as effectually as a refusal would to deprive them of such a right. That they did fail to do all they had undertaken by their contract to do was admittedly true. The question in the case, therefore, is, was a sufficient excuse for their failure shown?

It has been held in this state that a wrongful discharge by the client of his attorney relieves the attorney of the duty of further performance of his contract, and that he may recover of the client the sum agreed upon to be paid for the entire service covered by the contract. Smith v. Lipscomb, 13

Tex. 532; Headley v. Good, 24 Tex. 232; Myers v. Crockett, 14 Tex. 257. Like rulings have been often made by courts of other states. Sessions v. Warwick, 46 Wash. 165, 89 Pac. 482; Webb v. Nescony, 76 Cal. 621, 18 Pac. 796; Baldwin v. Bennett, 4 Cal. 292; Moyer v. Cautieny, 41 Minn. 242, 42 N. W. 1060; Barlett v. Bank, 79 Cal. 218, 21 Pac. 743, 12 Am. St. Rep. 139. On the other hand, it has been held that, if the attorney without just cause abandons his client before the proceeding he was employed to conduct is terminated, he forfeits his right to any part of the compensation agreed upon between them. Young v. Lanznar, 133 Mo. App. 130, 112 S. W. 17. The reasons for allowing a recovery by the attorney of the entire sum stipulated for in the contract as the compensation for his services are suggested by Judge Wheeler in his opinion in Myers v. Crockett, cited above. He said: "Where the attorney had entered upon and was proceeding to perform the services contracted for, and the conduct of the case was thus wrested from him by his client without any fault on his part, there would seem to be much reason in holding that he was entitled to recover the full amount of the fee contracted to be paid for the services contemplated by the contract. The case differs from the common cases of the contracts of builders, overseers, etc., in which it has been held in the later decisions that a readiness to perform or a tender of performance is not in all respects equivalent to performance; that, though it is for purpose of sustaining an action, it is not so for the purpose of ascertaining the measure of damages. Dorr v. Stewart, 3 Tex. 479; [Meade v. Rutledge] 11 Tex. 44; [Chamberlin v. McCallister] 6 Dana [Ky.] 352. The relation of attorney and client is a peculiar and confidential relation. It is incompatible with that relation for the attorney to accept the employment or confidence of both parties. And, after accepting an employment and enjoying the confidence of one of them, though afterwards discharged by his client without cause, the attorney cannot in general, with propriety, accept an employment by the opposite party in the same case. This consideration would seem to afford a good reason why such contracts should be excepted from the rule to which we have adverted, and the attorney be entitled to recover the full amount of the fee for which he had contracted from his client, who had wrongfully prevented him from performing his contract." In another of the cases cited (Baldwin v. Bennett, 4 Cal. 392), a further reason for the rule was suggested. There the Supreme Court of California said: "The general rule as to measure of damages in an action for breach of contract is correctly given by appellant's counsel. It 'is not the whole price agreed to be paid, but the actual loss sustained, which will consist of the value of the services rendered and the damage sustained by the refusal to al-

low performance of the rest of the contract.' To this rule there are, however, some exceptions. Where, from the nature of the contract, as in this case, no possible mode is left of ascertaining the damage, we will have presented the anomalous case of a wrong without a remedy, unless we adopt the only measure of damages which remains, and that is, the price agreed to be paid. Without this justice would be defeated, and parties encouraged to violate their contracts of similar character. The defendant not only breaks his contract, but also deprives the party of showing the amount of injury under the general rule. He cannot complain that a different rule is invoked, when it is the only one left to make him responsible for his want of good faith. This reasoning was adopted in a case precisely similar by the Supreme Court of Alabama."

From the authorities cited it appears that, if there was any evidence which can be said to have tended to show that appellant wrongfully dismissed or discharged O'Neal & Allday as his attorneys in the case he had employed them to defend, we would not be warranted in setting aside the judgment rendered against him. We think there was such evidence. It is clear from the record that appellant not only was to execute and deliver to his said attorneys the note and mortgage referred to, but also was to pay them the sum of $250 in cash for the services they were to render to him. It is also clear that he failed to pay to them said sum or any other sum in cash, but insisted that they should perform for him the service agreed upon for one-half the sum he had undertaken to pay them therefor. Allday testified: "He (Crye) came in there one day—in the office—and said: 'I can get up $250, and if you all don't accept that I will just get me another lawyer.'" O'Neal testified: "He (Crye) told me he didn't need our services any further—going to employ other lawyers." It seems to us that this testimony was sufficient to support the finding involved in the judgment of the court that appellant discharged O'Neal & Allday as his attorneys in the case, and that their dismissal as such attorneys was wrongful. Therefore, on the grounds urged in appellant's assignments, we cannot say the judgment is erroneous.

The judgment is affirmed.