## WHITE v. BURCH. (No. 12157.)

Court of Civil Appeals of Texas. Fort Worth. June 8, 1929.

Rehearing Denied June 29, 1929.

Patterson & Cates, of Decatur, for appellant.

Donald & Donald, of Bowie, H. G. Woodruff, of Decatur, and Taylor, Muse & Taylor, of Wichita Falls, for appellee.

BUCK, J. Mrs. L. B. White brought a suit in the district court of Wise county against M. W. Burch, an attorney at law, in which she alleged: That on October 12, 1927, her husband, J. M. White, died suddenly, and there was an investigation by the sheriff, the county attorney, and the justice of the peace, as to the cause of said J. M. White's death. That a report gained currency that said J. M. White had died from the effects of strychnine poisoning, and there was suspicion on the part of said officers that said Mrs. L. B. White, or her son, J. F. White, had administered, or caused to be administered, to said J. M. White said poison. That said J. F. White was placed in the county jail and held for several hours. That on the advice of her pastor, M. L. Wallis, in whom she had great confidence, she was induced to employ and did employ said M. W. Burch as her attorney. That a contract of employment was drawn up, by the terms of which Mrs. White agreed and promised to pay one-half, after certain deductions were made, of the amounts collected on three insurance policies: One in the Sextet Local Mutual Aid Association of Decatur, of the face value of $1,500; another in the Local Mutual Aid Association of Wise County, of the face value of $1,500; the third in the Modern Woodmen of America, of the value of $2,000. That said Burch agreed to collect said policies for plaintiff, and to defend her and her son against any charges brought against either or both of them on account of the death of said J. M. White.

She alleged that said Burch made certain statements and promises to her as to his ability to successfully represent her and to free her and her son of the charge threatened to be made against them of poisoning said J. M. White, and of his ability as a lawyer, and of his relations with and to the district judge, the county attorney, and the justice of the peace, and that he would see that the

grand jury did not indict her, and that he would guarantee that she would not go to the penitentiary, but that she was in imminent danger of indictment, conviction, and sentence to the penitentiary unless she intrusted her case to him as her attorney; that because of the investigations by the officers of Wise county of the circumstances surrounding the death of J. M. White, the aforesaid mentioned insurance companies or associations would refuse to pay her the amounts of said insurance policies; that such companies were in conspiracy against her with the purpose of defeating the payment of said policies, and to procure her conviction for the murder of her husband; that the physician who attended the said White at the time of his death was interested in said two mutual aid associations, and that he would endeavor to show that said White was murdered for the purpose of collecting said insurance, and to prevent the payment of said policies; that said companies had plenty of money, and that they would spend it to procure plaintiff's conviction for the murder of her husband, whether she was guilty or not; that they would undertake to prove the purchase by her son of the poison administered to J. M. White; that he, said Burch, had himself at one time been the county attorney of Wise county; that he well knew how the courts were operated and conducted; that he knew that men wholly innocent of any wrongdoing had nevertheless been convicted of crime and sentenced to terms in the penitentiary by the courts of Wise county; that he (defendant) represented to plaintiff that he was the head of a ring or clique that was in control of the courthouse; that he could do more for her than any other lawyer in town; that he could do things for her no other lawyer could do; that he knew who the members of the next grand jury would be; that he would have "friends" on said grand jury who would do his bidding, but that it would take money to handle them; that when she employed him, the said Burch, he would guarantee that said grand jury would not indict her, but that she certainly would be indicted unless he was so employed by her "to take care of" her and her son under such charges of murder; that he (defendant) "elected" F. A. Davenport, the county attorney; that the said Davenport was under obligations to him, and that he (Burch) could control the said Davenport; that he also "elected" H. E. Brady, the justice of the peace, who conducted an inquest as to the cause of the death of said J. M. White; that the finding of said Brady, upon said inquest, would or would not be favorable to her as he (defendant) directed; that said Brady was the uncle of said Davenport, and that by reason of his influence over them, and of their relationship to each other, and because of his influence generally, he could "get

anything he wanted out of the court house," and that no other lawyer could do so.

The defendant filed an answer, in which he denied generally the allegations of fraud and pleaded and showed by evidence that the contract had been made with the utmost good faith on his part; that, when Mrs. White and Mr. Wallis and the daughter and son of Mrs. White came to see him late in the afternoon, he talked with her and told her what he would charge her for representing her and her son, but further suggested that she return home and talk with her family and her friends and come back the next day; that she did return the next day and expressed a desire to employ him as her attorney, but stated that she would like to talk to two men before signing the contract; that the two men were M. L. Wallis, heretofore mentioned, and Carl Christian, the latter a merchant at Decatur with whom Mrs. White and her family had traded; that he telephoned and finally went down to the store of Mr. Christian and found that he was in Dallas and would not be back until the next day; that he offered to have his wife go out in the country some seven miles and get Mr. Wallis, but that young White volunteered to go and did get him and returned with him to Burch's office.

The following stated debts owing by Mrs. White and her deceased husband, and agreed to be taken out of the total amount of insurance collected before the division was made, are as follows:

| | |
|---|---:|
| To the First National Bank of Decatur (about) | $500 00 |
| C. L. Christian (funeral expense) | 245 00 |
| Kennerly Hardware Company, Gainesville... | 50 00 |
| Farmers & Merchants State Bank, Krum, Texas | 40 00 |
| Total | $835 00 |

Mr. Wallis testified that the payment of these debts before the division between said Burch and Mrs. White was secured through his intervention; that he told Burch that they were very poor people and had practically no means except the insurance policies, and asked him if he would not agree that the debts should be paid before the division was made; and that Burch agreed to do so.

The cause was tried before the court on special issues, each of which was answered in the negative. They are as follows:

"1. Just prior to the making of the contract of employment between the plaintiff and the defendant and introduced in evidence did the defendant make the following statements and representations to the plaintiff:

"(a) That she was in very serious trouble and that she and her son, J. F. White, would be in jail within twenty-four (24) hours under charges of murdering J. M. White unless she immediately employed him, defendant, as her

counsel; that there were a hundred little things that he could do in her behalf if he had the case right then; that he would guarantee that she would not go to the penitentiary, but that she was in imminent danger of indictment, conviction and sentence to the penitentiary unless she entrusted her case to him, defendant, as her attorney?

"(b) That by reason of the investigations by the officers of the circumstances surrounding the death of J. M. White the insurance companies or associations would refuse to pay her the amount of said insurance policies; that such companies were in conspiracy against plaintiff with the purpose of defeating the payment of her insurance policies and to procure her conviction for the murder of her husband; that the physician who attended the said White at the time of his death was interested in said two mutual insurance associations, and that he would endeavor to show that said White was murdered for the purpose of collecting said insurance and thus prevent the payment of said policy; that said companies had plenty of money and would spend it to procure plaintiff's conviction for the murder of her husband whether she was guilty or not?

"(c) That by reason of having been county attorney he, the defendant, well knew how the courts were operated and conducted; that he knew that men wholly innocent of any wrongdoing had nevertheless been convicted of crime and sentenced to terms in the penitentiary by the courts of Wise County; that he, defendant, was at the head of a ring or clique that was in control of the court house and for the reason could do more for her than any other lawyer in town; that he could do things for her that no other lawyer could do?

"(d) That he knew who the members of the next grand jury would be; that he would have friends on the next grand jury who would do his bidding, but that it would take money to handle them; that when she employed him that he would guarantee that said grand jury would not indict her but that she certainly would be indicted unless he was so employed by her to take care of her and her son under such charges of murder?

"(e) That he, defendant, elected F. A. Davenport county attorney, that the said Davenport was under obligations to him and that he, Burch, could control the said Davenport; that he elected H. E. Brady justice of the peace who had conducted an inquest as to the cause of the death of the said J. M. White; that the findings of said Brady upon said inquest would or would not be favorable to her according as he, defendant, directed; that said Brady was the uncle of said Davenport and that by reason of his, defendant's, influence over them and of their relationship to each other and because of his influence generally he could get anything he wanted

out of the court house and that no other lawyer could do so."

Other issues were submitted to be answered in case the jury should answer one or more of the issues (a) to (e) in the affirmative; but, since the jury answered all of the issues in the negative, such other issues were not answered.

The contract which plaintiff alleged was fraudulently obtained, and which she prayed to have canceled and held for naught, and that the defendant be required to deliver to her the three policies of insurance upon the life of J. M. White, the possession of which she had theretofore given to defendant as security for the attorney's fee charged by said Burch, is as follows:

"State of Texas, County of Wise:

"Know all men by these presents that I, Mrs. L. B. White, wife of J. M. White, deceased, have this day employed M. W. Burch as my attorney to represent me and my son, J. F. White, against any and all charges that may be brought by the State of Texas against either or both of us concerning the death of J. M. White in Wise County, Texas, which death occurred on or about the 12th day of October, A. D. 1927, and that said Burch is further employed to represent the said Mrs. L. B. White in the collection of all her interest in a certain policy owned and held by her as beneficiary in the (original) Sextet Local Mutual Aid Association of Decatur, Texas, and all of the interest owned and held by her in a certain policy in Group One of the Sextet Local Mutual Aid Association of Wise County, Texas, said policies having been issued to J. M. White, deceased.

"And the said Burch agrees on his part to represent the said L. B. White and J. F. White against any and all charges through all the courts of Texas wherein they may be charged or either of them may be charged with the homicide of J. F. White, deceased, and the said Burch further agrees to collect and receive for the said Mrs. L. B. White all sums of money that she may be entitled to under and by virtue of her interest in said policies, and the said Burch further agrees to collect all sums of money that may be due and owing to the said Mrs. L. B. White by virtue of a policy in the sum of $2,000.00 issued out of the Modern Woodmen of America.

"For and in consideration of his services in the defense of the said Mrs. L. B. White and her son, J. F. White, against any and all criminal charges that have been brought or that may hereafter be brought against either or both of the above named, and the collection of all interests of the said Mrs. L. B. White in the three above mentioned policies of insurance, I, the said Mrs. L. B. White do hereby assign, transfer and sell and set over to the said M. W. Burch a one-half undivided interest in and to each and all of said

above mentioned insurance policies, save and except such interest as may be owned by John Simmons or the First National Bank of Decatur, in the approximate sum of $506.45 and the sum of about $244.00 due and owing to Carl Christian of Decatur, Texas, and the further sum of $50.00 due and owing on a cook stove now owned by the said Mrs. L. B. White and the further sum of $40.00 due and owing by way of a note and chattel mortgage on two cows now in possession of the said Mrs. L. B. White.

"And I, the said Mrs. L. B. White, do hereby constitute and appoint the said M. W. Burch as my true and lawful attorney to represent me and to collect for me and receipt for and sign all necessary documents and papers pertaining to the collection of any and all sums of money that may be due and owing to me under and by virtue of the said above mentioned policies, and he is authorized to collect same, compromise and settle same or bring suit to enforce the collection of any, all or any part of said policies, and as in his judgment shall be to my best interest.

"Witness our hands this the 21st day of October, A. D. 1927.

"Signed: Mrs. L. B. White
"Signed: M. W. Burch

"Witnesses:

"M. L. Wallis,
"J. F. White,
"M. B. Hammond."

Upon the answers of the jury so returned, the court entered judgment for defendant and against plaintiff as to the cause of action sued for, and adjudged and decreed that the contract entered into by plaintiff, as one party, and M. W. Burch, as the other party, be in all things sustained, upheld, and decreed to be in full force and effect and the provisions thereof binding, and that said Burch be awarded his rights under said contract, and that the judgment rendered shall have force and effect to sustain the said defendant in his interest in the proceeds to be derived from those certain insurance policies heretofore mentioned. Judgment was given against plaintiff and her sureties on her cost bond for costs of court. From this judgment the plaintiff has appealed.

### Opinion.

Appellee has filed a motion to strike the statement of facts from the record, because, as alleged, it has not been filed in due time. But since the motion has not been submitted yet, we cannot at this time consider it, and will dispose of the case without regard to the effect said motion may have.

Error is assigned to the refusal of the trial court to submit to the jury plaintiff's special requested issue No. 1 as follows:

"You are instructed as a part of the law of this case that the contract which has been introduced in evidence established what is known in law as the Relation of Attorney and Client between the plaintiff as the client and the defendant as the attorney; that under the law the client has the right at any time to discharge her attorney, either with or without cause, whenever she is dissatisfied with the services of the attorney. If the attorney is discharged by the client without cause, then you are charged that the attorney is entitled to reasonable compensation for any services performed, up to the time of such discharge. But if it should appear to you that the attorney was discharged by the client, and that she had good cause therefor, then you are further charged that the attorney is not entitled to any compensation whatever. Bearing the above instructions in mind, you will answer the following special issues: (1) Did the plaintiff discharge the defendant as her attorney? Answer, Yes or No. (2) If you have answered the foregoing question in the affirmative, then answer the following issue: Was such discharge made with cause? Answer, Yes or No. (3) If to the foregoing questions you have answered that the plaintiff discharged the defendant as her attorney without cause, then you will state what, in your opinion, under the evidence submitted to you, would be a reasonable amount as compensation for any services he may have rendered in her behalf."

■■ We do not think there was any error in refusing to give this requested issue. There was no question presented in the pleadings or the evidence as to the right of appellant to discharge the appellee as her attorney. That appellant had the right to discharge her attorney either with or without cause is not questioned by appellee, but appellee, by way of cross-action, sued for a reasonable compensation for the services performed by him. This he had a right to do. An attorney discharged by his client without just cause is entitled to recover more than for the value of the services rendered prior to the discharge. The relation of attorney and client in this case did not exist until the contract had been fully executed, and therefore each party was dealing upon an equal basis, one seeking to employ and the other seeking employment. The right of a client to discharge her attorney is not in the case. Certainly she had the right to discharge her attorney either with or without cause. But the attorney is entitled to recover damages for the discharge without cause. There is ample authority to sustain the recovery by the attorney for an unjust discharge to the full amount of the fee agreed upon in the contract.

In Myers v Crockett, 14 Tex. 257, 258, the Supreme Court, speaking through Justice Wheeler, said: "And in such a case, where the attorney had entered upon and was pro-

ceeding to perform the services contracted for, and the conduct of the case was thus wrested from him by his client, without any fault on his part, there would seem to be much reason in holding, that he was entitled to recover the full amount of the fee contracted to be paid for the services contemplated by the contract. The case differs from the common cases of the contracts of builders, overseers, etc., in which it has been held, in the later decisions, that a readiness to perform, or a tender of performance, is not in all respects equivalent to performance; that, though it is so for the purpose of sustaining an action, it is not so for the purpose of ascertaining the measure of damages. * * * The relation of attorney and client is a peculiar and confidential relation. It is incompatible with that relation, for the attorney to accept the employment, or the confidence of both parties. And, after accepting an employment and enjoying the confidence of one of them, though afterwards discharged by his client without cause, the attorney cannot, in general, with propriety, accept an employment by the opposite party in the same case. This consideration would seem to afford a good reason why such contracts should be excepted from the rule to which we have adverted, and the attorney be entitled to recover the full amount of the fee for which he had contracted from his client, who had wrongfully prevented him from performing his contract."

In the case of Crye v. O'Neal & Allday, 135 S. W. 253, 254, the Texarkana Court of Civil Appeals, speaking through Chief Justice Willson, said: "It has been held in this state that a wrongful discharge by the client of his attorney relieves the attorney of the duty of further performance of his contract, and that he may recover of the client the sum agreed upon to be paid for the entire service covered by the contract."

The Supreme Court of California, in the case of Baldwin v. Bennett, 4 Cal. 392, 393, said: "The general rule as to measure of damages in an action for breach of contract, is correctly given by appellant's counsel. * * * To this rule there are, however, some exceptions, where from the nature of the contract (as in this case) [an attorney and client contract], no possible mode is left of ascertaining the damage, we will have presented the anomalous case of a wrong without a remedy, unless we adopt the only measure of damages which remains, and that is, the price agreed to be paid. Without this, justice would be defeated, and parties encouraged to violate their contracts of similar character. The defendant not only breaks his contract, but also deprives the parties of showing the amount of injury under the general rule. He cannot complain that a different rule is invoked, when it is the only one

left to make him responsible for his want of good faith."

See Hunt v. Test, 8 Ala. 713, 42 Am. Dec. 659.

In the Missouri case of Neeper v. Heinbach, 249 S. W. 440, by the Missouri Court of Appeals, it is said: "There having been a prevention of full performance by the acts of Mrs. Heinbach, Mr. Neeper, having been ready and willing to perform, could recover as for full performance."

■ Therefore, we conclude that we cannot disturb the judgment and findings of the court to the effect that the contract as made should be upheld, and that the defendant below is entitled to recover the full amount provided for by the contract. The evidence is ample to sustain the findings of the jury that no fraud was perpetrated by the appellee upon appellant. The testimony of appellee himself, and his wife, and Wallis, amply supports the contention of appellee that he made none of the representations alleged by appellant as a basis for fraud. The evidence is also abundantly ample to show that the charges made in the contract for the services of appellee were reasonable and customary. The testimony of a number of attorneys of Decatur, including the county attorney, a number of attorneys of Bowie, Montague county, and an attorney of Fort Worth, all go to show that the charges made in the contract were reasonable and proper charges. Therefore this assignment is overruled.

■ The third assignment is predicated on the failure of the trial court to give an instruction to the jury, to the effect that the relation of attorney and client is one of special trust and confidence, and the law requires that all dealings between them shall be characterized by the utmost fairness and good faith; that the burden of proof to establish the good faith of the transaction is upon the attorney. We do not believe that the facts in this case present a transaction between an attorney and his client. The making of a contract, by virtue of which the fiduciary relation of attorney and client arises, does not involve the relationship of attorney and client. It is but the means of creating such relationship. As said in 6 Corpus Juris, p. 688, § 212: "When and to Whom Rule Applies: The rule applies to every one who acts for another in the capacity of attorney, and acquires by his relationship the influence ordinarily exerted by an attorney over his client. It does not apply to transactions between the parties made while the relation of attorney and client does not exist, although the relation may subsequently be established between them, or where it is of such a nature as to preclude a presumption of undue influence, as where the attorney openly assumes a hostile attitude toward his client. Neither does the rule apply to mere contracts of retainer whereby

the relation is established, and the compensation of the attorney fixed. The rule is applicable only to that class of cases where the attorney, by virtue of the relationship, has acquired from his client conveyances, property, securities, etc., and not to an action to recover pay for his services, or where the only question is one of the construction of the contract."

Therefore, we conclude that no error is shown in the failure of the court to submit this instruction.

■ As fundamental error, the appellant presents the proposition that defendant's undertaking to prevent the indictment by the grand jury of plaintiff and her son, being a part of the services he was to render in her behalf, under the general contract of employment, is against public policy, and voids the contract in its entirety, and is such a service for which the law implies no promise to pay. Burch and his witnesses specially denied that any such promise was made by appellee. Therefore, whether or not such a promise was made by appellee depends upon a conflict of testimony. The jury evidently believed that appellee made no such promise. There was ample evidence to sustain such a finding. Therefore, we cannot disturb the judgment on this ground.

We conclude, on the whole, that we cannot disturb the judgment rendered by the trial court, and all assignments of error are overruled and the judgment is affirmed.

### On Appellant's Motion for Rehearing.

Appellant files a somewhat lengthy and vigorous motion for rehearing, and states that the defendant below did not elect to treat the contract as rescinded and to sue for damages for wrongful discharge. In his pleadings, defendant stated that in the event the court should hold, and in that event only, Mrs. White was entitled to a cancellation of her said written contract with said Burch, then said Burch would, with respect, show to the court that he was entitled to a reasonable fee for the services he had already performed. The trial court and the jury did not find that the contract made by Mrs. White and Mr. Burch was subject to cancellation. On the other hand, the jury definitely found that none of the allegations of fraud in plaintiff's pleadings was sustained; hence that portion of his pleading became ineffective and was not considered by the court or the jury in the verdict and judgment rendered.

It is urged that we are squarely in conflict with the holding in the case of Ferguson v. Fitze, 173 S. W. 500, by the Galveston Court of Civil Appeals. We have carefully examined the cited case and do not find that such conflict exists. In the cited case Mrs. H. C. Ferguson executed and delivered to C. B. Fitze and Uvalde Burns her promissory note for $200, and at the same time, to secure the payment thereof, executed and delivered to the said Fitze and Burns a mortgage on a certain tract of land in Angelina county. Afterwards, and before the maturity of the note, C. G. Fitze purchased said note and mortgage from Fitze and Burns, paying a valuable consideration therefor, and without notice of any infirmity of the maker that would render the note voidable. Fitze brought suit on the note and asked for a foreclosure of the mortgage. After the filing of the suit, it was made to appear to the court that the defendant Mrs. Ferguson was then insane. The court appointed I. D. Fairchild, a practicing attorney, guardian ad litem of Mrs. Ferguson, to represent her interest in the case. Mrs. Ferguson was charged by indictment in the district court of Angelina county with the commission of a felony, and upon a trial was convicted and sentenced to a two years' term of imprisonment in the penitentiary. Later, the judgment was reversed by the Court of Criminal Appeals and the case against her remanded for a new trial. Subsequently, on another trial of her case, she was again convicted and sentenced to the penitentiary. After this she was in a proper proceeding declared to be of unsound mind, and confined in one of the state's institutions for the insane, and the felony charge against her was thereafter dismissed. Between the first and second trials on the felony charge, she employed C. B. Fitze and Uvalde Burns, practicing attorneys, to represent her in the case, and, for their services to be performed, executed to them the note and mortgage herein sued upon. The court found under the undisputed evidence that Fitze and Burns never performed any of the services for which they were employed. The court further found that Mrs. Ferguson was non compos mentis at the time she executed the note and employed the attorneys. On this later finding the court further found that inasmuch as no services were rendered by the attorneys in behalf of their insane client, in pursuance of the employment, the recovery upon the note and mortgage could be defeated by proof of such fact, and this is all that the case holds with reference to the issues in controversy. We think the two cases are entirely different as to the facts.

We conclude, on the whole, that the motion for rehearing should be overruled, and it is accordingly so ordered.