## WHITE v. BURCH et al.
### No. 12386.

Court of Civil Appeals of Texas. Fort Worth.

July 5, 1930.

Rehearing Denied Nov. 1, 1930.

See, also, 19 S.W.(2d) 404.

Patterson & Oates, of Decatur, for appellant.

R. E. Taylor, of Wichita Falls, Donald & Donald, of Bowie, and H. Grady Woodruff, of Decatur, for appellees.

BUCK, J.

This is the second appeal in the case of Mrs. L. B. White v. M. W. Burch. The original case was tried in the district court of Wise county on August 9, 1928. In that case plaintiff attacked a contract of employment entered into by Mrs. White and M. W. Burch, on the ground of fraud alleged to have been practiced on Mrs. White by Burch. By the terms of that contract Mrs. White employed Burch to represent her and her son, J. F. White, "against any and all charges that may be brought by the State of Texas

against either or both of us concerning the death of J. M. White in Wise County, Texas, which death occurred on or about the 12th day of October, A. D. 1927, and the said Burch is further employed to represent the said Mrs. L. B. White in the collection of all her interest in a certain policy owned and held by her as beneficiary in the (original) Sextet Local Mutual Aid Association of Decatur, Texas, and all of the interest owned and held by her in a certain policy in Group One of the Sextet Local Mutual Aid Association of Wise County, Texas, said policies having been issued to J. M. White, deceased. And the said Burch agrees on his part to represent the said Mrs. L. B. White and J. F. White against any and all charges through all the courts of Texas wherein they may be charged or either of them may be charged with the homicide of J. M. White, deceased, and the said Burch further agrees to collect and receive for the said Mrs. L. B. White all sums of money that she may be entitled to under and by virtue of her interest in said policies, and the said Burch further agrees to collect all sums of money that may be due and owing to the said Mrs. L. B. White by virtue of a policy in the sum of $2,000.00 issued out of the Modern Woodmen of America."

It was agreed in said contract that as compensation for the legal services rendered and to be rendered by Burch for Mrs. White and her son, not only in the defense of any criminal charges that might be brought against either of them, but in the collection of the three policies above mentioned, Mrs. White was to pay Burch one-half of the proceeds of the policies so collected after the deduction of certain bills owing by Mrs. White to two banks, the First National Bank of Decatur, $500; the F. & M. State Bank of Krum, $40; C. L. Christian, funeral expenses, $245; Kennerly Hardware Company of Gainsville, $50—making a total of $835, which was to be deducted from the amount collected from these three policies, and the remainder was to be divided equally between Mrs. White and Burch. See 19 S.W.(2d) 404. The defendant in his cross-action won in the court below, and on appeal to this court the judgment of the trial court was affirmed. An application for writ of error was made to the Supreme Court, and the application was denied.

We held in that case that an attorney unjustly discharged may recover the full amount of the fee agreed upon in the contract.

In the instant suit, plaintiff pleaded the institution of the former suit, the trial in the district court, the appeal to this court, and the affirmance of the judgment of the trial court, and the application to the Supreme Court for writ of error, and the refusal of said application, but further pleaded that the only matter determined by the trial court and the two appellate courts was that the con-

tract of employment between Mrs. White and Burch was not void for fraud, and left undetermined the amount, if any, which Burch would be entitled to under the facts of the case.

This suit was filed for the purpose of having the district court construe the contract made by Mrs. White and Burch. Plaintiff alleged that neither Mrs. White nor her son had ever been indicted and four grand juries had met and adjourned since the date of the contract, and that defendant had done nothing towards complying with the terms of the contract, and towards earning the fee therein stipulated: that therefore he was not entitled to the full compensation recited, but only, in any event, entitled to a reasonable compensation for the services actually rendered. Plaintiff further alleged that, after the rendition of the judgment in the trial court, and while plaintiff's appeal therefrom was pending in the Court of Civil Appeals, plaintiff and defendant Burch, by instrument in writing, on, to wit, the 20th day of December, 1928, authorized and empowered defendant John A. Simmons to collect the proceeds of said three insurance policies, and, after collecting the same, to hold the proceeds thereof in trust pending said appeal; that on final adjudication thereof said Simmons was by the terms of said instrument directed to divide the money so collected in accordance with the final judgment in the prior case; that pursuant thereto said Simmons had collected and now holds in trust the proceeds of said policies, save and except several items which, by agreement of the parties thereto, said Simmons has paid out; that a copy of said instrument of date December 20, 1928, is hereto attached and marked Exhibit C. Plaintiff tendered and offered "to pay to defendant Burch anything or amount which may be justly due him for legal service rendered by him in her or her son's behalf in virtue of said contract," and willingly submitted herself to the equity of the court.

Plaintiff's prayer was that "citation be issued to defendants M. W. Burch and J. A. Simmons requiring them to appear and answer herein; that upon the trial of this cause that the court construe said contract; that same be construed by the court to mean and intend that the assignment thereby by plaintiff to defendant Burch of a one half interest in said three insurance policies was contemplated by the parties to be, and intended as, an attorney's fee to be paid to defendant Burch for the defense of plaintiff and her son, J. F. White, under such criminal charges as might be brought against them for causing the death of J. M. White; that if the court find, in accordance with the foregoing allegations, that no criminal charges have been brought against plaintiff or her son, that no trial has been had, that no legal defense has been made or con-

ducted of plaintiff or her son, that the defendant has not performed the legal services contracted to be performed, that the conditions under which such services could or can be performed have not come about, that the consideration for said assignment of said interest has wholly failed, then upon so finding that the court declare said contract terminated and discharged; that defendant Simmons be ordered and directed by the court to pay over to plaintiff the proceeds of said three insurance policies as so collected and now held by him; for costs of suit; and for all such other and further relief, general or special, at law or equity, as, upon the trial hereof, plaintiff may show herself to be justly entitled."

The defendants in a joint answer pleaded a general demurrer and special exceptions, excepted to plaintiff's petition because it "wholly fails to allege or show in what particular a construction of said contract by the court becomes necessary, for plaintiff wholly fails to allege or show in what way or manner an ambiguity arises by virtue of the language of said contract, or in what way the contract differs from the original contract, to evidence which the written instrument was executed."

Defendant further pleaded that "the petition fails to allege any legal reason or excuse for the failure to present the contention in the original suit as referred to as raised or attempted to be raised in the petition as filed herein, and therefore a legal estoppel arises for the law abhors a multiplicity of suits and only gives each party his or her day in court."

Defendant further pleaded that plaintiff adopted the written instrument as setting forth the original contract, and, without setting up any allegations as to mistake, accident, or fraud, all parties are bound thereby, and no remedy exists for a construction of such contract but only to enforce same.

Defendant further pleaded that Mrs. White was one and the same person as in the former suit, and that defendant Burch was the defendant in the former suit, and that the matters sought to be pleaded in this suit were res adjudicata; all the matters which plaintiff relies on in this suit were involved in the former suit.

## Opinion.

■ The good of society and the preservation of rights and good order require that, when once the rights of parties have been determined by the ultimate tribunal provided by law for their adjudication, the same should pass from the field of strife forever; any other rule would fill the court with causes which have once been determined, and render all rights of property uncertain and the most solemn judgments a mockery. Crane v. Blum, 56 Tex. 325.

■■ It is no answer to a plea of a former judgment that some of the parties in the second suit were not parties to the first, if the first was decided on its merits, and not on exception to the joinder of parties. Girardin v. Dean, 49 Tex. 243; Frankel v. Heidenheimer Bros., 1 White & W. Civ. Cas. App. § 807. It is also well recognized that not only is a former judgment decisive of all questions that were raised in the former suit, but of all questions that were involved in the former suit and could and should have been raised.

■ We have before us the transcript and record of the former suit, and in the defendant's answer and cross-action in that transcript the defendant pleaded:

"In the event the court should hold, and in that event only, that the said Mrs. White is entitled to a cancellation of her said written agreement with said Burch, then said Burch would with respect show to the court that he is entitled to a reasonable fee for the services that he has already performed; that immediately after said employment said Burch entered upon a careful study of the case of both Mrs. White and her son, J. F. White in order to be prepared for trial in the event of their said indictment and devoted much time and study to these particular cases; that he interrogated many persons and every person purporting to know any fact concerning said cause; that he made a careful study of the facts surrounding the death of the said J. M. White, and made written statements and obtained written statements concerning the exact circumstances of his death; that he studied medical authorities to determine the symptoms of strychnine poisoning and in fact devoted a great amount of time, labor and study from the date of his employment to the date that Cates and Patterson notified him of their intended suit, to a conscientious and careful study of said causes and in preparation for trial and in the proper protection of the interests of his clients; that the greatest labor is in the proper preparation for trial rather than in the actual trial after the indictment. That in this way defendant rendered great and valuable service to his said clients at a great labor and loss of time to himself and that a reasonable fee for the services rendered would be in the sum of ($2,160.00) Twenty One Hundred Sixty Dollars.

"Wherefore, plaintiff prays the court that only in the event that his contract with the said Mrs. L. B. White be canceled that he have pay for his labor, loss of time and services rendered in the sum of $2160.00 costs of suit and general and special relief."

Plaintiff in the first trial submitted the issue and charge that, if the attorney is discharged by the client without cause, "then you are charged that the attorney is entitled

515

to a reasonable compensation for any services performed by the attorney, of which the client received the benefit, up to the time of such discharge." The court would not give this charge, but evidently the plaintiff considered that it was supported by the pleadings and called for by the evidence.

The case made on former trial is found in 19 S.W.(2d) 404, 407. In the discussion of the case this court said:

"(3) If to the foregoing questions you have answered that the plaintiff discharged the defendant as her attorney without cause, then you will state what, in your opinion, under the evidence submitted to you, would be a reasonable amount as compensation for any services he may have rendered in her behalf."

This court held that there was no error in refusing to give the requested issue, and that the appellant had authority to discharge her attorney either with or without cause. We further cited a number of cases, including Myers v. Crockett, 14 Tex. 257, by the Supreme Court, and Crye v. O'Neal & Allday, 135 S. W. 253, by the Texarkana Court of Civil Appeals, and Baldwin v. Bennett, 4 Cal. 392, to the effect that, where an attorney has been wrongfully discharged by his client, such fact relieves the attorney of the duty of further performance of his contract, and that he may recover of the client the sum agreed upon to be paid for the entire service covered by the contract.

Moreover, we believe by the terms of the agreement of December 20, 1928, signed by Mrs. White and her attorneys and by M. W. Burch, that it was agreed that John A. Simmons was appointed their lawful attorney in fact to collect the three policies of insurance, in the total amount of $5,000, and to receipt for and release the same, and the parties signed the same further agreement: "We further empower and direct said attorney to take said funds when collected and deposit same in the First National Bank of Decatur, in the name of John A. Simmons, trustee; and to hold and keep the same on deposit in said name in said bank until a certain lawsuit now pending by and between Mrs. L. B. White and M. W. Burch in the Court of Civil Appeals of the Second Judicial District of Texas, at Fort Worth, involving the cancellation of a contract by and between the said Mrs. L. B. White and the said M. W. Burch, shall have been prosecuted to final judgment or settlement in said Court of Civil Appeals or the Supreme Court of Texas. After the said suit shall have been finally adjudicated, or in the event same shall be settled by mutual agreement, the said John A. Simmons shall partition and divide the moneys so collected between the said Mrs. White and the said Burch in accordance with said final judgment or in accordance with said agreement, as the occasion may be."

We think this contract and agreement binds Mrs. White, and, in case the former suit shall be finally determined in favor of Burch, authorizes her attorney in fact, Mr. John A. Simmons, to divide the money so collected in accordance with the terms of the contract theretofore entered into between Mrs. White and Burch.

The trial court concluded that there was no cause of action set up in plaintiff's petition, and that the contract entered into by Mrs. White and Burch was a valid and subsisting agreement, and, plaintiff declining to amend, the general demurrer and the plea of legal estoppel were sustained, and dismissed the suit and adjudged that the defendants M. W. Burch and John A. Simmons were entitled to go hence without day and recover of Mrs. White all costs in their behalf expended.

We affirm this judgment.

On Motion for Leave to File Second Motion for Rehearing.

CONNER, C. J.

The majority, BUCK, A. J., dissenting, not feeling entirely satisfied, on a former day set aside our former order overruling appellant's original motion for rehearing and granted her application to file a second motion. The second motion was filed on October 25, 1930, since which time we have examined the plaintiff's petition, the defendant's answer, the charge of the court, the verdict of the jury, and the judgment in the former suit between these same parties, to wit, in cause No. 12157, White v. Burch, reported in 19 S. W. (2d) 404. In that case it was decided that appellee Burch was wrongfully discharged as appellant's attorney, and that Burch was hence entitled to the full fee contracted for; Texas authorities being cited as sustaining this proposition. Writ of error in that case was refused by the Supreme Court; thus, apparently at least, approving the holding. Such, too, seems to have been the construction given the contract of employment by the parties thereto as evidenced by the subsequent agreement relating to the collection of insurance policies entered into pending the appeal in cause No. 12157.

It is true the decisions on the subject are not in harmony. Appellant cites the case of Shirk v. Neible, 156 Ind. 66, 59 N. E. 281, 83 Am. St. Rep. 150, as most nearly in point. That case is distinguishable, among other particulars, in that, when first approached by a father and two sons charged with murder, the attorneys declined to fix the amount of their fee, stating "that it was impossible to determine at that time what services they would be called upon to render, but that their charges would be reasonable." Later, after the attorneys had diligently prosecuted an investigation by communicating with the witnesses, family, and attending an examining

trial, the father again approached the attorneys, and again requested the attorneys to state what their fee would be. Upon the father's insistence, they replied that "they would, if required to fix their fee at that time, consider all the work that might have to be done in the case, and would fix it at $3,000," which the father then agreed to pay. Yet later, when the father was sued on the fee contract, it was made to appear that the father and his two sons had not been indicted but had been discharged. In disposing of the case, the court said:

"The services of said attorneys in 'and about the defense of the Neibles were worth $500, and no more. If all of the Neibles had been indicted for murder, and tried separately therefor, the services of their attorneys would have been worth $3,000. * * *

"At the first meeting, and before the employment, and while the parties stood at arm's length and upon an equal footing, Neible was capacitated to make a contract with respect to fees that the law would require him to keep. Then there was no special confidence between them—no vis major—to give one advantage over the other in making a bargain. At that time, if an agreement could not have been made to his liking, Neible could have turned to other lawyers without injury or impairment of his defense. But at this first meeting, and before their employment, Neible requested said attorneys to state the total amount of their fee for the defense, which they refused to do, assigning for the refusal the same reasons that subsequently yielded to their effort to do so. The employment made was a general employment, under which the attorneys were entitled to a reasonable compensation for the services rendered, and, having accepted such employment and established a relation of confidence that gave them vantage ground, the law thereby stripped them of all power during the continuance of the relation to contract with their client for a fee in excess of fair compensation." ·

■ By reference to the original opinion in this case, reported in 19 S.W.(2d) 404, 405, it may be seen that appellee Burch "filed an answer, in which he denied generally the allegations of fraud and pleaded and showed by evidence that the contract had been made with the utmost good faith on his part; that, when Mrs. White and Mr. Wallis and the daughter and son of Mrs. White came to see him late in the afternoon, he talked with her and told her what he would charge her for representing her and her son, but further suggested that she return home and talk with her family and her friends and come back the next day; that she did return the next day and expressed a desire to employ him as her attorney, but stated that she would like to talk to two men before signing the contract; that the two men were M. L. Wallis, heretofore mentioned, and Carl Christian, the latter a merchant at Decatur with whom Mrs. White and her family had traded; that he telephoned and finally went down to the store of Mr. Christian and found that he was in Dallas and would not be back until the next day; that he offered to have his wife go out in the country some seven miles and get Mr. Wallis, but that young White volunteered to go and did get him and returned with him to Burch's office."

That state of the negotiations was established by the verdict and judgment of the trial court, approved on appeal to this court, and left undisturbed by our Supreme Court.

The contract in this case, therefore, must be held to have been made after due deliberation between parties dealing at arm's length and capable of making any lawful agreement that they saw proper to make.

In Ruling Case Law, vol. 2, p. 1036, § 120. it is said:

"Before an attorney undertakes the business of a client he may contract with reference to compensation for his services, as no confidential relation then exists and the parties deal with each other at arm's length. A contract made under such circumstances is as valid and unobjectionable as if made between other persons not occupying fiduciary relations, and who are, in all respects, competent to contract with each other, and will be enforced unless champertous, or in contravention of public policy, or unless it appears that it was induced by fraud or misrepresentation, or that, in view of the nature of the claim, the compensation is so excessive as to evince a purpose on the part of the attorney to obtain an improper or undue advantage over the client; and the attorney, as a condition of enforcing it, is not bound to show that it was just, fair, and reasonable as is often held to be his duty in case of contracts made after the inception of the relation of attorney and client." .

In section 129 it is further said:

"Where the employment of an attorney is under an express valid contract stipulating for the compensation which the attorney is to receive for his services, such contract is, generally speaking, conclusive as to the amount of such compensation. It is always within the power of the party to make a special contract for the compensation of his attorney, and no usage can have any effect upon his rights when he has made one, whether the contract specifies a definite amount, or provides that the attorney shall receive a certain proportion of the amount recovered in the suit for which he is employed. Such contract is binding on the attorney though the amount stipulated be inadequate, nor can a client avoid a contract with his attorney for fees for the reason simply that in the end it did

not bring to him the results which he had anticipated thereunder."

In Corpus Juris, vol. 6, p. 724, § 293, it is said:

"Where an attorney has been discharged by his client without cause, the attorney may rescind the contract of employment and may recover on a quantum meruit for services rendered up to the date of his discharge; or he may treat the contract as continuing, although broken by the client, and may recover damages for the breach.

"According to the weight of authority, the measure of damages for such breach of contract is the full contract price. * * *"

In Cyclopedia of Law & Procedure, vol. 4, p. 984, it is said:

"When an attorney makes a contract to perform certain services for an agreed sum and the client, without any valid excuse or reason, discharges him or prevents the fulfillment of the contract, the attorney is entitled to recover the full contract price."

The authors of the foregoing quotations cite cases in support of the text in notes.

It should be noted that this case is also distinguishable from cases holding that reasonable compensation for services, if any, already performed is the measure of damage where performance is impossible, in that at the time the contract was entered into performance by appellee Burch was not impossible, not even yet impossible, as all parties are living, and there exists no law of limitation for indictment and prosecution for murder. The contract took effect immediately on its execution, and operated by its terms as at once vesting in Burch one-half of amounts justly due on the insurance policies named, less the specified sums. Burch promptly entered upon performance and actually performed the same, as there was evidence to show, up to the time appellant repudiated the contract, and all factors of contingency or of impossibility were equally known and must be held to have been within the contemplation of both parties to the contract. By the execution of the contract and part performance, Burch not only assumed important responsibilities, but also barred himself from employment by any person, if any, desiring to do so, who might wish to prosecute the charges for murder against appellant and her sons, or desiring to resist payment of the insurance policies.

The majority finally conclude that this case was correctly disposed of in the original opinion, written by Justice BUCK, filed on July 5, 1930. Hence, upon the authorities cited in that opinion and herein, appellant's original and second motions must be overruled, and it is so ordered.