DALLAS ELECTRIC COMPANY v. CITY OF DALLAS.

Decided February 4, 1900.

**1. Municipal Corporation—Street Lighting Contract—Constitutional Law.**

Where a city, empowered by its charter to provide for lighting its streets, makes a contract with an electric lighting company whereby the company agrees to provide, for a term of three years, a specified number of electric lights, at a given annual rental, not greater than the amount the city is authorized to collect and appropriate for such object annually, and under which payment is to be made only on the performance of the services specified, such contract does not create a debt coming within the provision of the Constitution forbidding the creation of indebtedness by a city without provision being then made for the collection of a sufficient amount to pay interest thereon and provide a sinking fund of at least 2 per cent.

**2. Same—Signature of Mayor—Taxpayer's Rights.**

Where an electric lighting company proposed to a city council in writing to furnish a given number of arc lights for the streets for three years at a specified annual rental, which was accepted by the council, and in pursuance thereof the company erected an additional number of arc lamps as agreed, and furnished lights to the city for a year and a half, for which it was paid at the agreed rates, with the approval of the mayor, on its statements rendered monthly, the further performance of such agreement will not be enjoined at the instance of a taxpayer of the city on the ground that a contract was never prepared or approved by the city attorney or signed by the mayor.

APPEAL from Dallas. Tried below before Hon. RICHARD MORGAN.

*Coke & Coke,* for appellant.

*Alexander, Clark & Thompson,* for appellee.

RAINEY, ASSOCIATE JUSTICE.—This suit was brought by Emmett A. Ellis, and the Standard Light and Power Company, as citizens and taxpayers of the City of Dallas, against the city of Dallas and its officers and the Dallas Electric Company, seeking to enjoin said city and its officers in making further payments out of the city treasury to the Dallas Electric Company, and to enjoin the Dallas Electric Company from receiving such payments on account of an alleged void and extortionate contract for lighting the streets and public crossings, and also seeking a mandamus to compel the council of the city of Dallas to open and consider a certain bid made by said Standard Light and Power Company, for a contract to light the streets and public buildings of said city, which bid the council had refused to open and consider, though the lowest and best bid received. All the defendants answered, challenging plaintiff's right to any relief whatever on various grounds of both law and fact. The trial of the cause resulted in a judgment denying the writ of mandamus prayed for, but adjudged that there was no contract between the city of Dallas and appellant, and enjoining the said city and its said officers from making any payment by reason of said contract. This judgment was acquiesced in by all the parties except the Dallas Electric Company, which alone appeals.

*Conclusions of Fact.*—In July, 1897, the City of Dallas, by action of its council, asked for sealed proposals to furnish the city with from 200 to 300 arc lights, for a term of from one to three years, under the expiration of the then existing arrangements for lighting the city. In pursuance of said request, appellant and the electric company made sealed bids. The bid of the beaten electric company being the cheapest, the contract was awarded it, but having failed to comply with the requirements of its bid, appellant, the Dallas Electric Company, submitted a supplemental bid which was accepted by the city council on July 27, 1897. The bids submitted were as follows:

"To the Hon. Mayor and City Council of Dallas, Texas:

"Gentlemen.—We beg to submit the following proposal: To light the city of Dallas with the present 245 arc lamps, and to furnish 55 additional arc lamps, the same as are now furnished, to be placed as the city council may direct. Said lamps to be what is known as standard 2000 candle power each. We further propose to furnish an electric current of 9.6 amperes and 50 volts to each lamp, maintaining, lighting, and keeping in order each and every lamp from dusk until daylight, excepting moonlight nights, or when the moon is not obscured by clouds, for a term of not less than three years, commencing on the first day of December, 1897, for the sum of $85 per lamp per year. We further propose to furnish the city such incandescent lights as we are now furnishing and have been for the last year, free of charge. Respectfully submitted,

"DALLAS ELECTRIC COMPANY,
"W. H. McGrath, Vice-Prest."

"July 27, 1897.

No contract was ever prepared or approved by the city attorney, or signed by the mayor of said city. Prior to December 1, 1897, appellant put itself in position to perform the services by it agreed to be performed under the aforesaid supplemental bid, and placed said additional 55 arc lamps at such points and places as were designated by the city council. From that time until the granting of the injunction in this case, June 19, 1899, appellant performed the services agreed to be performed by said contract, and was performing said services at the date of the institution of this suit and the granting of the injunction therein.

Appellant, at the end of each month, made out and presented a bill against the city of Dallas for the services rendered the said city during said month, said bill being made on the terms and for the price provided by the aforesaid contract of July 27, 1897, said bill usually expressing that it was for "services rendered as per contract." Said bills, when presented, were approved by the mayor and city secretary, and a warrant therefor issued by the auditor of said city, which warrants were, upon presentation to the treasurer of the city, paid.

Shortly prior to March 14, 1899, some question having arisen as to

whether appellant had a valid contract with the city for lighting the streets, etc., the same was referred by the council to a committee for investigation and report, which committee had reported, among other things, that the council ratify the action of the former council, said contract being valid, which report was at the same meeting of the council adopted. This report was adopted by the council, and on March 28, 1899, this action of the council was vetoed by the mayor. The council then ordered that bids be advertised for, for a contract for lighting the streets. Pursuant to said resolution advertisement was duly made, the city reserving the right to reject any and all bids. In pursuance of said advertisement the Standard Light and Power Company filed with the city council the following bid.

"DALLAS, TEXAS, April 8, 1899.

"To the Hon. Mayor and City Council of Dallas, Dallas Texas:

"Gentlemen.—In accordance with your request for bids, as advertised in the Times-Herald for the past ten days, same to be filed before 10 o'clock to-day, we submit the following: In view of the enormous expense which is attendant upon our fulfilling this proposition, our bid is made for one year with the city's option of accepting same for nine years more at one dollar per lamp per year less than bid for one year, which would be a saving on a ten years contract of over three thousand dollars per year over prices bid on for one year, and over the present schedule of prices of from thirty-five to fifty thousand dollars for the full term.

"We propose to furnish the lights, 300, erected where the light committee or city council may designate, for the sum of sixty-five dollars and sixty cents per year for each lamp, and in case the city council should see fit to accept the bid for nine years more, then for sixty-four dollars and sixty cents per year per lamp. This bid is based on standard 2000 candle power lamps, to be burned from sundown to sunrise, according to the Julian calendar, each and every night contracted for, and in case of the lamps being out to deduct from the monthly settlement as much as we should have received had they burned, and when the lamps are out for a period of three hours to count the lights out all night.

"In connection herewith we make the following proposition to burn on a moonlight schedule for sixty dollars and sixty cents per lamp per year: (B) That in case a contract is closed on this proposition, we will be able to fulfill same within four months from the date of signing' of same by the mayor. (C) That we will furnish a bond in the sum of ten thousand dollars to secure faithful performance, and that we will commence and connect up the lights just as rapidly as possible, and that we will collect from the city for the time lamps actually burn on our circuit, namely: If a lamp be connected to our circuit on the 15th of the month, to collect from the city for one-half of the month, and to connect all lamps to our circuit just as rapidly as possible. (D) It is understood that, in completing necessary arrangements to fulfill the contract, it will be necessary for this company to erect some poles, and it is

hereby agreed that, on account of this proposition by the city council, permits be issued to the Standard Light and Power Company for same without further delay, on their depositing $2.50 per pole, as required in ordinances. (E) We further agree to light all public buildings as required free of charge to the city of Dallas. Most respectfully submitted,

"The Standard Light and Power Company,

"Per Emmette A. Ellis, President.

"Attest: J. C. King, Secretary."

On April 11, 1899, it was resolved by the city council that said bid be returned to the Standard Light and Power Company unopened, and that the contract of the Dallas Electric Company, until December 1, 1900, be ratified. Thereafter, on April 14, 1899, the mayor vetoed the aforesaid resolution, upon the grounds that said contract with appellant was illegal because there was no provision made for the levy of a tax and creation of a sinking fund and the contract was for a longer period than one year, and on the ground that no contract was ever signed by the mayor as provided by the charter of the city. Which veto was presented to the council by the mayor and read on April 18, 1899, but the council refused to sustain same. The council did not at any time by levy of a tax or otherwise provide for the creation of a sinking fund to protect the payments of its obligation under the aforesaid contract. There was no special fund under the control of the city out of which its obligation could have lawfully been paid. It was not contemplated that any service past the current fiscal year in which the contract was made should be paid for out of the general revenues of the year in which the contract was made, such revenues being necessary to the current expenditures of that year. But the budget for each fiscal year provided an amount for lighting the city for that year equivalent to the price for that year agreed by aforesaid contract to be paid to appellant. Appellee did for one year offer to furnish lights $19.40 cheaper per light per annum than the Dallas Electric Company's price in the three year contract. That is a saving to the city of Dallas of $7320 per annum. The Standard Light and Power Company offered with its bid a good bond for $10,000, and delivered a check for the sum of $2000 to secure its good faith in undertaking to light the city, which check was returned to it, together with its bid, unopened.

*Conclusions of Law.*—Does the contract attempt to create a debt on the part of the city which falls within the constitutional inhibition against the creation of a debt by a city without at the same time making provision for the assessment and collection of a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 cents? To so hold would deprive the city of making contracts for a term of years for those purposes for which the annual revenues are properly applied, when the making of such contracts would be much more beneficial to the city than when the contract was for one year only.

The city, by its charter, was specially authorized to make provisions for lighting the city. To this purpose it was contemplated that a portion of the annual revenues would be devoted. The distinction between contracts of this character and those creating a debt that requires the making of provision for its payment at the time of its creation is clearly drawn by the Supreme Court of the United States in the case of the City of Walla Walla v. Water Company, 172 United States, 19. It is there said: "There is a distinction between a debt and a contract for a future indebtedness to be incurred, providing the contracting party perform the agreement out of which the debt may arise. There is also a distinction between the latter case and one where an absolute debt is created at once, as by the issue of railway bonds, or for the erection of a public improvement, though such debt be payable in the future by installments. In the one case the indebtedness is not created until the consideration has been furnished; in the other the debt is created at once, the time of payment being only postponed."

The contract now under consideration being for rental of lights for the use of the city, and payment therefor to be made only upon the performance of the service provided for, and the annual rental thereof not exceeding the amount the city council was legally authorized to collect and appropriate for each year, it did not create such debt as comes within the constitutional provision which inhibits the creation of a debt without at the same time making provision for its payment. City of Walla Walla v. Water Company, supra; Waco Water Co. v. Waco, 27, S. W. Rep., 675; City of Cleburne Water Co., 37 S. W. Rep., 655; City of Valparaiso v. Gardner, 97 Ind., 1; City of East St. Louis v. Gaslight Co., 98 Ill., 415; Grant v. City of Davenport, 36 Iowa, 396.

On this proposition there is a conflict of authority, but the weight thereof is in line with the views above expressed.

In the case of City Council v. Dawson Water Works Company, 32 Southeastern Reporter, 915, quite a collation of the authorities pro and con can be found.

On the other contention, that the contract was void because not signed by the mayor, we will not determine whether or not it was such as required his signature. The city having a right to pay for lighting the city out of the current revenues when the service was performed, and the appellant from the inception of this contract until this controversy arose having furnished the city with lights as contracted for, which the city council paid for from time to time out of the current revenues as the services were rendered, with the approval of the mayor, we are not prepared to hold that said contract can now be avoided because the mayor did not originally sign the contract.

But if the contract was illegal, as alleged, the city was the only party which could take advantage of its invalidity. There is no fact alleged or shown that appellees suffered such injury by reason of the contract as authorized the enjoining the city from recognizing it, and complying

with its terms. While there are authorities of high standing that hold a contrary view to the one here expressed, our Supreme Court, in the case of Altgeld v. City of San Antonio, 81 Texas, 436, fully supports our position. That decision, so far as we are aware, has not been overruled, nor is it in conflict with any other decision of our Supreme Court. It is therefore the law of this State. See also Waco Water Co. v. City of Waco, 27 S. W. Rep., 675; Word v. City of Victoria, 46 S. W. Rep., 284-287.

The judgment of the court below is reversed and judgment here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.