**COTTLE COUNTY v. McCLINTOCK & ROBERTSON.**

**No. 5272.**

Court of Civil Appeals of Texas. Amarillo.

March 17, 1941.

Rehearing Denied April 21, 1941.

Wm. B. Combest, James M. Whatley, and C. E. Blount, all of Paducah, and G. E. Hamilton, of Matador, for appellant.

Williams & Bell, of Childress, for appellees.

JACKSON, Chief Justice.

On a former appeal of this case from a judgment of the trial court sustaining a general demurrer to appellee's petition and dismissing the cause the judgment of the trial court was reversed and the cause remanded. McClintock & Robertson v. Cottle County, Tex.Civ.App., 127 S.W.2d 319, writ dismissed, correct judgment.

The suit was instituted and prosecuted by appellees, V. H. McClintock and Edgar L. Robertson, composing the law firm of McClintock & Robertson, in the District Court of Cottle County to recover the sum of $20,313.34 from Cottle County because of a breach of a written contract entered into between appellees and appellant on January 11, 1937, and amended February 8, 1937, by the terms of which appellees were employed to perform certain services for the county.

We deem it sufficient in stating the pleadings to say that appellees alleged that Cottle County is a municipal corporation; had issued various road bonds and warrants, the proceeds of which had been expended on roads in Cottle County, constituting a part of the system of State highways, some of which obligations the county considered eligible to participate in the County and Road District Highway Fund. The county judge and the commissioners employed McClintock & Robertson to examine the records of the county, the State Highway Department, assemble such data and evidence as was necessary to ascertain the amount of the county's indebtedness eligible to participate in said County and Road District Highway Fund and to present it to the proper officials for approval and participation in such fund.

The appellees alleged fully and in detail the roads involved, the amount of warrants and bonds issued, the work they did in discharge of their duties under the contract, the breach thereof by the county, and attached to their petition copies of the contract, the amendment thereto and the order of the commissioners' court dated March 12, 1937, abrogating such contract.

The appellant answered that the contract sued on was illegal and unenforceable because the commissioners' court did not have the authority to make the contract; because it created a debt against the county and no provision was made for levying a tax to pay such indebtedness and if the debt was to be paid out of the general fund as alleged such fund was depleted, greatly in arrears, and the running expenses of the county chargeable thereto exceeded the revenues collected for the benefit of such fund; that the contract indebtedness was never included in the budget nor any amendment thereof; that the duties imposed upon appellees by this contract were a public function of the officers of the county, were of an exclusive nature and void as against public policy and for fraud.

The case was tried before the court without the intervention of a jury and judgment rendered in behalf of appellees for the sum of $10,676.78, which is 10% of the amount the court found the county had expended on roads of the county which were eligible and entitled to participate in the County and Road District Highway Fund, from which judgment the county appealed.

The appellant by proper assignment asserts that under the Constitution the commissioners' court is a court of limited jurisdiction, can only make contracts which are authorized by some section of the Constitution or statute and that the contract sued on was made without authority, illegal and void.

The provisions of the contract material to a disposition of this appeal are here set out. The original contract, in paragraph

5, stipulated that: "For the services aforesaid, said county will pay to said attorneys as fees therefor, a sum equal to 10% of the net amount or amounts of indebtedness or reimbursement of expenditures of said county, that may be assumed or approved for participation by the state, or any board, department or agency of the state or Federal government, and of the amount or amounts of any funds or refunds that may be made to the said county from any source as a result directly or indirectly, wholly or in part, of the services of said attorneys under this contract, and while the same is in force."

It provides in paragraph 6: "The term of this contract is to be a period of two (2) years from the date of the approval and acceptance hereof by said Commissioner's Court for said county; provided however, that should any part of such undertaking on the part of said attorneys be started or commenced within said two year term, and not finished or completed within said time, said attorneys shall have a reasonable time in which to finish or complete the same so long as there may be a chance of securing or obtaining for said county, such State or other participation and/or assumption of any part of its said indebtedness; and it is further understood that this contract shall be exclusive during its life."

On February 8, 1937, the contract was amended as follows: "It is especially agreed and understood that this contract is to concern and include only such class of indebtedness as is now eligible for participation by the state under existing laws, and is not intended to include any indebtedness that may be made eligible by the passage of any new laws, and which would make other classes of indebtedness eligible for participation without the necessity of the service of said attorneys."

Section 5 of the original contract was amended as follows: "It being especially agreed and understood, however, that the County shall not be required or liable to pay said attorneys on their fees as aforesaid in any one year, a sum greater than the total amount that may be paid during such year by the state or any agency thereof, on any such indebtedness that may be approved for participation by the state, and that if the amount paid by the State during the first year after such approval is not sufficient to pay all of said fees, the balance should be carried over and be paid during succeeding years until the amount actually paid by the State, or so much thereof as may be necessary, shall equal the total amount of fees due said attorneys. It being understood that by the amount paid by the State is meant to include only amounts so paid by the State upon indebtedness approved by the State for participation through the services of said attorneys under this contract."

■ This precise question was presented to this court on the former appeal in support of the action of the trial court in sustaining a general demurrer to appellee's petition and was passed on adversely to the appellant's contention, and we adhere to our former ruling. McClintock & Robertson v. Cottle County, supra, and authorities cited.

The appellant insists that the judgment is erroneous since the contract created a debt against the county and was in violation of article 11, section 7 of the Constitution of the State of Texas, Vernon's Ann.St.

The part of the section relied on by appellant reads as follows: "But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund."

■ The Supreme Court in McNeill v. City of Waco, 89 Tex. 83, 33 S.W. 322, 324, in defining the meaning of the word "debt" in this provision of the Constitution says: "We conclude that the word 'debt,' as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation."

The courts have consistently followed this definition of the word "debt" in an unbroken line of decisions both before and after this decision.

The contract provides, in effect, that the fees of the attorneys shall be a sum equal to 10% of the road expenditures of the county approved for participation in the fund as the result of the services of said attorneys and also provides that the county is not required or liable to pay the attorneys in any one year a greater amount than

was paid during that year out of such fund on the indebtedness of the county eligible to participate in said County and Road District Highway Fund.

We said in our former opinion, McClintock & Robertson v. Cottle County, supra 127 S.W.2d 322]: "If the benefits sought were not obtained no fee was due. The contract is wholly contingent and the amount to be earned thereunder depended exclusively on the net amount of the bonded indebtedness of the County that was assumed or approved for participation in the fund by the proper officers through the efforts of appellants [who are appellees herein]; the contract concerned only such indebtedness as was eligible 'for participation * * * under existing laws'; the County was not required to pay any fees in any one year in excess of the total sum that might be paid during that year by the State on such indebtedness. 'It being understood that by the amount paid by the State is meant to include only amounts so paid by the State upon indebtedness approved by the State for participation through the services of said attorneys under this contract.'"

The Supreme Court of the United States in City of Walla Walla et al. v. Walla Walla Water Co., 172 U.S. 1, 19 S.Ct. 77, 85, 43 L.Ed. 341, 349, in defining "debt" uses this language: "There is a distinction between a debt and a contract for a future indebtedness to be incurred, provided the contracting party perform the agreement out of which the debt may arise. There is also a distinction between the latter case and one where an absolute debt is created at once, as by the issue of railway bonds, or for the erection of a public improvement, though such debt be payable in the future by installments. In the one case the indebtedness is not created until the consideration has been furnished; in the other, the debt is created at once, the time of payment being only postponed."

In Dallas Electric Co. v. City of Dallas et al., 23 Tex.Civ.App. 323, 58 S.W. 153, this language of the Supreme Court of the United States is quoted with approval by the Dallas Court of Civil Appeals in an opinion written by Justice Rainey. The Supreme Court of the State refused a writ of error and we assume that such definition was endorsed by the highest judicial authority in Texas. Hence this contract was not inhibited by the Constitution of the State since no absolute "debt" was created

against the county by the terms and provisions of such contract.

In Foard County v. Sandifer, 105 Tex. 420, 151 S.W. 523, the Supreme Court held that a contract made by the commissioners' court for the sale of the school land of Foard County was valid and the obligation to pay 5% commission thereon did not constitute a debt inhibited by article 11, section 7 of the Constitution. In this case the amount of the commission was contingent since the court fixed no maximum but only a minimum price per acre at which the land could be sold.

Neither the appellant nor the appellees could determine at the time this contract was made whether a fee would be earned and if so the amount thereof since the fee and the amount were entirely contingent upon the amount of the road indebtedness of Cottle County found eligible to participate in the County and Road District Highway Fund.

In West Audit Co. v. Yoakum County, Tex.Com.App., 35 S.W.2d 404, 406, the Supreme Court, speaking through Judge Sharp, says: "It appears from the record that it would have been impossible, at the time of the making of the contract, for the commissioners' court to provide for the levying and collecting a sufficient tax to pay the interest thereon and provide a sinking fund, for the reason that they did not know, and had no way of estimating, the amount of the debt, or how much tax to levy or how much sinking fund to provide for."

See, also, McClintock & Robertson v. Cottle County, supra, and the authorities therein cited.

The appellant contends that the contract was unenforceable since after the county adopts its budget it is prohibited from making any expenditure from the funds of the county for that year that are not included in the budget or in an amendment thereto. The record shows that L. D. Gibson qualified as County Judge of Cottle County on January 11, 1937, as the successor to V. H. McClintock; that on the same day the contract involved was executed and the amendment thereto signed February 8th thereafter. The law provides that the county judge shall budget the expenses of the county in July and present such budget to the commissioners' court in August. Vernon's Annotated Statutes, articles 689a—9, 689a—11. There is no

testimony that the budget had been made prior to the making of the contract, its amendment or its abrogation by the commissioners' court March 12, 1937; hence, there was no opportunity to place it in the budget. However, in our opinion this was not an item that could have been budgeted since the contract created only a contingent obligation and the amount thereof was not known nor the time of payment determined. McClintock & Robertson v. Cottle County, supra.

The appellant contends by a proper assignment that the contract is illegal and void inasmuch as appellee is seeking a recovery out of the current revenue allotted by law to the general fund of the county; such fund was greatly in arrears when the contract was made, is still greatly in arrears and the ordinary expenses of the county far exceed the revenue coming into the general fund of the county each year.

The record shows that on January 11, 1937, there were outstanding warrants against the general fund of Cottle County amounting to $40,251.67. None of these warrants, however, are listed as a liability against the county or its general fund in the budget of 1937 introduced in evidence. On April 8, 1940, about the date of the trial of this suit in the lower court, there were outstanding warrants against the general fund of the county in the sum of $54,000. The record does not show for what these warrants were issued, when they were due and payable nor whether the county had other expected revenues out of which these warrants might be paid, nor does it show the assessed valuation of the property for any year except 1936. Hidalgo County et al. v. Haney, Tex.Civ.App., 67 S.W.2d 409.

■ The appellant alleged that the taxable value of the property was $6,063,916 for the year 1936. On this amount the county could levy for the general fund 25¢ on the $100 valuation, or $15,159.79. The record does not disclose on what date the commissioners' court fixed the rate of taxes to be assessed and collected against the property of the county, but in view of articles 7041 to 7045, inclusive, Vernon's Civil Statutes of the State of Texas, Annotated, the trial court was authorized to find that the rate was not fixed by the commissioners' court at the time the contract involved was executed nor when abrogated by an order of the commissioners' court, and this unlevied tax was a source of revenue available to the county which had not

been appropriated when the contract was made.

In the City of Corpus Christi v. John Woessner, 58 Tex. 462, 467, the Supreme Court, speaking through Associate Justice Stayton, says: "We are of the opinion that the issuance of warrants on current expenses of a city, which do not exceed the current revenue derived from taxation, permitted by law to be levied to meet current expenses, and such other revenue as a city may have from other sources than taxation, cannot be said to be the creation of a debt prohibited by law unless a special tax be levied to meet the interest and create a sinking fund."

■ The record shows that on January 11, 1937, not including what the tax collector termed "the insolvents" there were delinquent taxes due the county aggregating the sum of $79,472.53 and out of this amount the general fund was entitled to $19,283.16. This amount, too, was a source of revenue from which appellees and appellant could have reasonably contemplated the payment of appellees for their services. The part of the budget for 1937 introduced, which obviously was made after the contract sued upon was made and breached by the county, discloses that only $11,625 of the taxes that could be raised from the 25¢ on the $100 valuation was allocated to the general fund and but $6,000 of the delinquent taxes. No disposition is made of the balance of the taxes due the general fund if levied, nor the balance of the delinquent taxes, but it does show other resources amounting to $6,900 that was to be obtained from other revenues. These items, $11,625, $6,000 and $6,900, made the total of the expected expenditures, which aggregated the sum of $23,925. Under these facts we are not authorized to disturb the implied finding of the court that the county was not without resources to pay its current expenses. Hidalgo County et al. v. Haney, supra.

■ The court finds on ample testimony that the contract was properly entered into by the appellees and appellant; that the appellees relying thereon entered into the performance of their duties thereunder, examined the necessary records, contacted various and sundry people, obtained affidavits, made trips to Austin and performed all things required of them in the discharge of their obligations under the contract; that the contract and its amendment was fairly entered into; that the commissioners'

court had full knowledge of its provisions, terms and conditions and was subjected to neither fraud nor undue influence; that on March 12, 1937, after the appellees had spent several weeks in the performance of the agreement, the appellant, without legal or other justifiable reason, breached the contract, refused to permit the appellees to perform their part of the contract, which resulted in their damages in the sum of the judgment. Having been discharged without sufficient reason appellees were entitled to recover on their contract. White v. Burch, Tex.Civ.App., 19 S.W.2d 404; Crye v. O'Neal & Allday et al., Tex.Civ. App., 135 S.W. 253; McClintock & Robertson v. Cottle County, supra. The court sets out in detail all the facts consisting of the number and amounts of the bonds and warrants issued, the roads built from the proceeds thereof; those constituting a part of the system of State highways, the sum eligible to participate in the County and Road District Highway Fund, and awards judgment in favor of the appellees for 10% thereof.

We have considered the other assignments urged by appellant but in our opinion none of them present reversible error.

The judgment is affirmed.