IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 04-1004

════════════

 

Hoover Slovacek LLP,

formerly Hoover, Bax &
Slovacek, L.L.P., Petitioner,

 

v.

 

John B. Walton, Jr.,
Respondent

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Eighth District of Texas

════════════════════════════════════════════════════

 

 

Argued December 1,
2005

 

 

Justice Hecht, joined by Justice Medina and Justice Willett, dissenting.

 

 

I
withdraw my dissenting opinion dated June 30, 2006 and substitute this one in
its stead.

No
rational plaintiff changes lawyers midway through a case in order to recover
less, and John B. Walton, Jr. was not irrational. So when he retained what is
now the law firm of Hoover Slovacek LLP to collect royalties for oil and gas
produced on his 32,500-acre ranch for a contingent fee of 28.66% of any
recovery, he must have reasoned that if he had to discharge the firm it would
be to maximize recovery, in which event the firm should not receive a
percentage of the final recovery and thereby benefit from services rendered by
the new lawyers but should be paid only what the fee was worth at the time of
discharge. Without an agreement on the subject, if Hoover Slovacek were
discharged for good cause, it might have the right to be paid the value of its
services rendered,[1] but if it were discharged without
good cause, it would be entitled to its full contingent fee from the final
recovery.[2] Walton and Hoover Slovacek agreed
instead that if he terminated the representation, with or without cause, he
would “immediately pay the Firm the then present value of the Contingent Fee”.
Hoover Slovacek would not receive a percentage of the final recovery if
discharged without cause, and Walton would pay the value of the fee, which
could take into account more than the time spent and thus might be more or less
than the value of the services rendered by the firm based on an hourly rate.

What
appears to have been a good-faith effort by lawyer and client to reach a fair
arrangement for handling the difficult possibility of estrangement was,
according to the Court, unconscionable, meaning that “a competent lawyer
could not form a reasonable belief that the fee is reasonable.”[3]
This, of course, does not reflect very well on Hoover Slovacek or its
distinguished counsel in this case, who have advocated the reasonableness of
the fee, and the Court’s condemnation of what might appear to be a rather
innocuous fee agreement may also come as a surprise to a large number of other
lawyers who have up until now considered themselves competent. Worse still, the
Court says, the agreement violated public policy, which means, not that it was
bad, but that it “contravene[d] some positive statute or some well‑established
rule of law”.[4] The Court does not actually identify
a statute or rule of law that has been contravened, and truthfully, none has
been. In fact, the agreement has done no devilry at all. To be sure, Walton and
Hoover Slovacek have fought hard over how much is owed, the firm claiming at
least $1.7 million (28.66% of $6 million, which Walton once may have thought
his claims were worth), maybe more, while the client admits to owing no more
than $257,940 (28.66% of the $900,000 his claims actually settled for), and
maybe nothing at all. But fighting over an agreement does not make the
agreement unconscionable and against public policy, or the number of valid
agreements would be much smaller.

What
does make an agreement unconscionable and against public policy, according to
the Court, is not its terms, which seem fair enough in this case, or any
consequence to the parties, as yet unrealized here, but what might
happen if the agreement were made between other parties or in other
circumstances. If a court can imagine circumstances in which an agreement could
be unconscionable — and here, the Court has tried to list every conceivable
way that could happen, and then some — it is unconscionable. Here are
the seven reasons the Court gives for holding this termination fee agreement
unconscionable and against public policy:

$         
The agreement does not distinguish between discharges with and without
cause. True, but surely a lawyer and client can agree to a termination fee
that avoids wrangling over whether discharge was with or without cause, given
the intrinsic uncertainties in that issue. Walton and Hoover Slovacek settled
on a termination fee that Walton, at least, surely thought would be less than a
percentage of the ultimate recovery, and the firm, perhaps, thought might be
more than the value of services rendered at an hourly fee. Mere compromise is
not unconscionable, but if it were, no matter here. Walton undertook to prove
that he discharged Hoover Slovacek with cause but failed to convince the jury,
so even if the agreement had drawn the distinction, he could not take advantage
of it. At this point, the distinction is irrelevant.

$         
If the contingent fee were worth more at the time of discharge than at the
end of the case, it would be a bad deal for the client. So it would, but a
fee agreement is not unconscionable and against public policy merely because it
could be a bad deal for the client. As noted at the outset, a rational
plaintiff does not change lawyers to recover less, and if that is what Walton
did, he has himself to blame. The Court criticizes this agreement because it
would benefit the client only when the claim is improved by changing lawyers, but
since the client is in control, benefit to the client should always be intended
and, absent misjudgment, achieved. Moreover, there is no evidence in this
case that Hoover Slovacek’s contingent fee was ever worth more than it
would have been at the end of the case. If the fee was worth as much at
discharge as it would have been at the end, the agreement gave the firm only
what Texas law would if there had been no termination clause, since it has not
been established that discharge was for cause. Walton could have made a
bad deal, but there is no evidence he did.

$         
Ascertaining the value of a contingent fee mid-case is hard. There is
some tension between this argument and the previous one, which assumes that a
contingent fee can be valued before the end of the case to the client’s
detriment. Actually, the value of a contingent fee mid-case may well be
impossible to prove with sufficient certainty for recovery, even in a case like
this one involving only economic damages. Walton’s lawyer first demanded $58.5
million to settle, the defendants countered with $6 million and conditions,
Walton demanded $6 million without conditions, the defendants offered $300,000,
and the case finally settled for $900,000, due largely to new and unforeseen
developments. Walton discharged Hoover Slovacek 22 months into a 42-month-long
case. What was Hoover Slovacek’s contingent fee worth at discharge? That
question has been fully tried but has still not been answered — there is no
evidence what a willing buyer would have paid a willing seller for a claim like
Walton’s the day he discharged Hoover Slovacek — and it may not be answerable.
Even if the audit of royalty payments Walton commissioned had been completed,
uncertainties remained in determining whether he had been underpaid. But the
Court seems not to notice that Hoover Slovacek bears the burden of proving the
value of its fee, and any difficulty in carrying that burden does not prejudice
Walton, it benefits him.

$         
A lawyer who knows that the value of a claim is declining has an incentive
to misbehave, provoke discharge, collect more than he would in the end, and
turn to more lucrative business. This argument rejects what the previous
one asserts, that the value of a contingent fee is hard to predict. But more importantly,
the Court appears to assume a jurisdiction in which lawyers do not owe clients
a fiduciary duty, the intentional breach of which is a tort remedied by actual
and exemplary damages. A lawyer as wicked as the Court’s imagination may be
more deterred by the threat of punitive damages than the threat of a voided
contract. In any event, no evidence in this case hints at anything even
approaching this pollo poco nightmare.

$         
The agreement required Walton to pay up at discharge. But if there had
been no agreement, Walton would undisputedly have been required to pay Hoover
Slovacek at discharge the value of its services rendered. The impoverished
client the Court hypothesizes — certainly not Walton — who could afford
representation only on a contingent fee, would be required to pay for the value
of the discharged lawyer’s services at termination. To agree to what the law
would otherwise provide can hardly be unconscionable. Even so, it would in
fact have been no burden on Walton. He could have paid Hoover Slovacek,
just as he paid his new lawyers $283,000 at an hourly rate. And in any event,
in over nine years, Walton has not yet paid Hoover Slovacek one cent for
prosecuting his claims against the Bass defendants.

$         
The agreement violated professional rule 1.08(h) by allowing Hoover Slovacek
to acquire an interest in Walton’s claim other than by a contingent fee
authorized by rule 1.04. Here the circularity is dizzying. To restate the
argument: if the agreement was unconscionable in violation of rule 1.04 of the
Texas Disciplinary Rules of Professional Conduct, it gave Hoover Slovacek an
interest in Walton’s claim prohibited by rule 1.08(h), which excepts only
interests created by an agreement valid under rule 1.04, which this agreement
was not, if indeed it wasn’t. If the termination fee was not unconscionable,
rule 1.08(h) is inapplicable, and if the termination fee was unconscionable,
rule 1.08(h) is inconsequential. Either way, rule 1.08(h) is irrelevant.

$         
A client should not reasonably expect a contingent fee to equal or exceed
the recovery. Certainly not, but even if that could ever occur with
a termination fee like the one in this case, and it is not at all clear that it
ever could, it has not happened in this case. Walton settled for
$900,000, and there is no evidence that he owes Hoover Slovacek more than
28.66% of that amount. The Court notes that its concerns do not extend to
hourly fee agreements, but it is not clear why only contingent fees are subject
to abuse.[5]

In
sum, the Court “believe[s] Hoover’s termination fee provision is unreasonably
susceptible to overreaching, exploiting the attorney’s superior information,
and damaging the trust that is vital to the attorney-client relationship.”[6]
Although I think the Court’s arguments are strained at best, even if they had
more substance, a fee agreement should not be voided as unconscionable and
against public policy based merely on what could happen but was not
intended and has not in fact occurred. It could have happened that
Hoover Slovacek provoked its own discharge for nefarious reasons, or that
Walton discharged Hoover Slovacek for cause, or that when he did, the
termination fee exceeded the contingent fee, or that he was somehow prejudiced
by the difficulty in evaluating the termination fee, or that he had to pay
before any recovery was realized, or that the fee exceeded his recovery. Any of
these things could have happened, but none did. Walton and Hoover
Slovacek anticipated exactly what occurred and tried to make suitable provision
for it. Whether their agreement was unconscionable, and therefore abhorrent to
public policy and void, should be determined by their initial expectations and
the actual consequences, not on hyperbolic hypothesizing in hindsight. As the
comment to rule 1.04 states:

 

[F]ee arrangements normally are made at the outset of
representation, a time when many uncertainties and contingencies exist, while
claims of unconscionability are made in hindsight when the contingencies have
been resolved. . . . Except in very unusual situations, therefore, the
circumstances at the time a fee arrangement is made should control in
determining a question of unconscionability.[7]

 

Agreements are
unconscionable when they are not or cannot be proper, not when it is merely
possible for them to be improper.

Again,
it matters not whether the parties have behaved admirably throughout. Walton does
seem to have had an inflated view of the value of his claims (about 900%),
though perhaps no more than many clients, and he may not have had good cause to
discharge Hoover Slovacek — at least he could not convince a jury he did. And
Hoover Slovacek may have been overly aggressive, at first in pursuing the
defendants (demanding $58.5 million to settle a $900,000 claim) and then in
pursuing Walton (demanding millions for a legal fee worth $257,940). But Hoover
Slovacek’s lawyers are not here on disciplinary charges, and Walton is not
applying for Client of the Year. An agreement is not unconscionable because a
party acts unconscionably — and there is certainly no evidence that Walton or
Hoover Slovacek did.

If
the Court is serious about today’s analysis, many more fee agreements and other
contracts will be unconscionable. The Court says that “[h]ourly fee agreements
. . . do not implicate the [same] concerns” it has about the
agreement in this case,[8] but they do. Fees based on hourly
rates seemingly reasonable at the outset could end up being excessive in
easily imaginable circumstances, but that mere potential does not invalidate an
agreement. 

But
the Court may not be serious. It may be that today’s decision will be limited
to this one particular fee agreement in this one isolated situation, portending
nothing for fee agreements in general.[9] If so, then the rules
governing fee agreements will merely have a minor exception, and only the
Court’s authority to articulate general rules will suffer. Of course, the
careful lawyer on a contingent fee can simply charge what the law allows for
termination of representation without good cause: the full fee. The client will
be penalized for changing lawyers and will pay for services not rendered, but
it will not be unconscionable.

We
have taken as given that the only fee a Texas lawyer is prohibited from
charging is one that is illegal or unconscionable because that is what rule
1.04(a) of the Texas Disciplinary Rules of Professional Conduct provides.[10] In most states, lawyers cannot
charge unreasonable fees;[11] not so in Texas. In Texas, a lawyer is prohibited only from charging a fee that a competent lawyer could not
reasonably believe to be reasonable.[12] Of course, Texas law does not award lawyers unreasonable fees, so one could argue that
notwithstanding rule 1.04(a), a lawyer suing to collect a fee must prove that
it is reasonable, not merely that it is not unconscionable. In matters other
than lawyer discipline, the Disciplinary Rules of Professional Conduct have
been held to “provide guidelines and suggest the relevant considerations” without
supplying the rule of decision,[13] and one could argue
that the role of rule 1.04(a) in enforcing fee agreements is similarly limited.[14] But none of the parties here does.

The
Court remands the case to the court of appeals to review the sufficiency of the
evidence regarding the jury’s failure to find that Walton discharged Hoover
Slovacek for good cause. In the end, Hoover Slovacek may recover as much or
more without the termination fee provision. This is certainly an odd way of
applying unconscionability. I would enforce the termination fee agreement.
Accordingly, I respectfully dissent.

 

                                                                                   


Nathan L. Hecht

Justice

Opinion
delivered: November 3, 2006


















[1] Compare Royden v. Ardoin, 331 S.W.2d
208, 209 (Tex. 1960) (holding that an attorney suspended from practice before
completion of representation was not entitled to recover on the contract or for
quantum meruit, but stating: “If an attorney, without just cause, abandons his
client before the proceeding for which he was retained has been conducted to
its termination, or if such attorney commits a material breach of his contract
of employment, he thereby forfeits all right to compensation.” (internal
quotation marks omitted)), and Kelly v. Murphy, 630 S.W.2d 759,
761‑762 (Tex. App.—Houston [1st Dist.] 1982, writ ref’d n.r.e.) (holding
that an attorney who dismissed his client’s lawsuit without authorization was
not entitled to recover for quantum meruit), with Rocha v. Ahmad,
676 S.W.2d 149, 156 (Tex. App.—San Antonio 1984, writ dism’d) (holding that
attorney discharged for good cause was nevertheless entitled to recover for
quantum meruit, and stating: “If the former client pleads and proves good cause
for discharge, . . . then the attorney is not entitled to recover
under the contract of employment. In such a case, the attorney may attempt to
recover a fee for services rendered up to the time of discharge under quantum
meruit.”).





[2] Mandell & Wright v. Thomas 441 S.W.2d 841,
847 (Tex. 1969) (“In Texas, when the client, without good cause, discharges an
attorney before he has completed his work, the attorney may recover on the
contract for the amount of his compensation.” (citing Myers v. Crockett,
14 Tex. 257 (1855); White v. Burch, 19 S.W.2d 404 (Tex. Civ. App.—Fort
Worth 1929, writ ref’d); White v. Burch, 33 S.W.2d 512 (Tex. Civ.
App.—Fort Worth 1930, writ ref’d); Cottle County v. McClintock &
Robertson, 150 S.W.2d 134 (Tex. Civ. App.—Amarillo 1941, writ dism’d
judgment cor.))). One might well think that the most the client would owe in
such circumstances would be the contractual fee prorated for the services the
lawyer actually performed. See Restatement
(Third) of the Law Governing Lawyers § 40 cmt. c (2000) (“Allowing
a discharged or withdrawing lawyer to recover compensation under a fee contract
with the client is sometimes more appropriate . . . where the client
discharges a contingent-fee lawyer without cause just before the contingency
occurs, perhaps in order to avoid paying the contractual percentage fee.
. . . [T]he contractual fee is prorated for the services actually
performed . . . .”). But that is not Texas law, and the parties in this case
have not suggested it should be.





[3] Tex.
Disciplinary R. Prof’l Conduct 1.04(a) (“A fee is unconscionable if a
competent lawyer could not form a reasonable belief that the fee is
reasonable.”).





[4] Lawrence v. CDB Servs., Inc., 44 S.W.3d 544,
553 (Tex. 2001) (“‘Public policy, some courts have said, is a term of vague and
uncertain meaning, which it pertains to the law‑making power to define,
and courts are apt to encroach upon the domain of that branch of the government
if they characterize a transaction as invalid because it is contrary to public
policy, unless the transaction contravenes some positive statute or some well‑established
rule of law.’“); Town of Flower Mound v. Stafford Estates Ltd. Partnership,
135 S.W.3d 620, 628 (Tex. 2004); Texas Commerce Bank, N.A. v. Grizzle,
96 S.W.3d 240, 250 (Tex. 2002);.Churchill Forge, Inc. v. Brown, 61
S.W.3d 368, 373 (Tex. 2001).





[5] See Restatement
(Third) of the Law Governing Lawyers § 34 cmt. c (2000)
(“Accordingly, the reasonableness of a fee due under an hourly rate contract,
for example, depends on whether the number of hours the lawyer worked was
reasonable in light of the matter and client. It is also relevant whether the
lawyer provided poor service, such as might make unreasonable a fee that would
be appropriate for better services, or services that were better or more
successful than normally would have been expected . . . .”).





[6] Ante at ___.





[7] Tex.
Disciplinary R. Prof’l Conduct 1.04 cmt. 7; see also Restatement (Third) of the Law Governing
Lawyers § 34 cmt. c (“Although reasonableness is usually assessed
as of the time the contract was entered into, later events might be relevant.
. . . [E]vents not known or contemplated when the contract was made
can render the contract unreasonably favorable to the lawyer or, occasionally,
to the client. . . . To determine what events client and lawyer
contemplated, their contract must be construed in light of its goals and
circumstances and in light of the possibilities discussed with the client
. . . .”).





[8] Ante at ___.





[9] See County of Cameron v. Brown, 80
S.W.3d 549, 565-566 (Tex. 2002) (Hecht, J., dissenting) (“It may be, however —
one cannot always tell for sure — that the Court does not really mean what it
says. . . . [I]t may be that this case is just another ‘restricted
railroad ticket, good for this day and train only.’“ (citing Smith v.
Allwright, 321 U.S. 649, 669 (1944) (Roberts, J., dissenting))).





[10] Tex.
Disciplinary R. Prof’l Conduct 1.04(a) (“A lawyer shall not enter into
an arrangement for, charge, or collect an illegal fee or unconscionable fee.”).





[11] Alaska R. Prof’l Conduct Rule 1.5(a); Ariz. R. Prof’l Conduct ER 1.5(a); Ariz. R. Prof’l Conduct, ER 1.5(a); Ark. R. Prof’l Conduct, Rule 1.5(a),
(e)(3); Colo. R. Prof’l Conduct
Rule 1.5(a), (f); Colo. R. Civ. P.
Ch. 23.3 (contingent fees), Rules 3, 7; Conn.
R. Prof’l Conduct, Rule 1.5(a); Del.
R. Prof’l Conduct , Rule 1.5(a); D.C.
R. Prof’l Conduct Rule 1.5(a); Ga.
R. Prof’l Conduct Rule 4-102, Rule 1.5(a); Haw. R. Prof’l Conduct Rule 1.5(a); Idaho R. Prof’l
Conduct Rule 1.5(a); Ill. R.
Prof’l Conduct Rule 1.5(a); Ind.
R. Prof’l Conduct Rule 1.5(a); Kan.
R. Prof’l Conduct Rule 1.5(a), (e) (court review); Ky. R. Prof’l Conduct SCR
3.130(1.5(a)); La. R. Prof’l Conduct
Rule 1.5(a), (f)(5) (unearned fee/expense deposit/retainer provision); Md. R. Prof’l Conduct Rule 1.5(a); Minn. R. Prof’l Conduct Rule 1.5(a); Miss. R. Prof’l Conduct Rule 1.5(a); Mo. R. Prof’l Conduct Rule 4-1.5(a); Mont. R. Prof’l Conduct Rule 1.5(a); Nev. R. Prof’l Conduct Rule 155.1; N.J. Rules Prof’l Conduct RPC 1.5(a); N.M. R. Prof’l Conduct RULE 16‑105(A);
N.D. R. Prof’l Conduct Rule
1.5(a); Okla. R. Prof’l Conduct
Rule 1.5(a); R.I. R. Prof’l Conduct
Rule 1.5(a); S.C. R. Prof’l Conduct
Rule 1.5(a); S.D. R. Prof’l Conduct
Rule 1.5(a); Tenn. R. Prof’l Conduct
Rule 1.5(a); Vt. R. Prof’l Conduct
Rule 1.5(a); Va. R. Prof’l Conduct
Rule 1.5(a); Wash. R. Prof’l Conduct
Rule 1.5(a); W. Va. R. Prof’l Conduct Rule 1.5(a); Wis. R. Prof’l Conduct SCR 20:1.5(a);
and Wyo. R. Prof’l Conduct Rule 1.5(a). See also ABA Model Rules of Professional Conduct
Rule 1.5(a) (no “unreasonable” fees or expenses) (1983); ABA Ethics 2000 Revised Model Rules of
Professional Conduct Rule 1.5(a), (e)(3) (2003); and Restatement of the Law Governing Lawyers
§§ 34-35 (contingent fees, incorporating §34)(2000).





[12] See supra note 2.





[13] In re Users System Services, Inc., 22 S.W.3d
331, 334 (Tex. 1999); In re EPIC Holdings, Inc., 985 S.W.2d 41, 48 (Tex.
1998); National Medical Enterprises, Inc. v. Godbey, 924 S.W.2d 123, 132
(Tex. 1996); Henderson v. Floyd, 891 S.W.2d 252, 254 (Tex. 1995) (per
curiam); Spears v. Fourth Court of Appeals, 797 S.W.2d 654, 656 (Tex.
1990); Ayres v. Canales, 790 S.W.2d 554, 556 n.2 (Tex. 1990).





[14] Cf. Johnson v. Brewer & Pritchard, P.C.,
73 S.W.3d 193, 205 (Tex. 2002) (referring to Rule 1.04 to determine a
permissible referral fee); Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998) (referring to Rule 1.04 for factors indicating reasonableness of attorney fee); Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997) (same).